UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STACY C. NOTLEY, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-0536-G |
| STERLING BANK, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are the motion of the plaintiffs, Stacy Notley and Sandra
Notley (collectively, "the plaintiffs" or "the Notleys"), for summary judgment on
liability, the objections of the defendant, Sterling Bank ("the defendant" or "the
bank"), to the plaintiffs' summary judgment evidence, and the motion of the
defendant for summary judgment. For the reasons set forth below, the defendant's
objections to the plaintiffs' summary judgment evidence are overruled, the plaintiffs'
motion for summary judgment is denied, and the defendant's motion for summary
judgment is denied.

I. <u>BACKGROUND</u>

The Notleys commenced this action on October 20, 2004, in the 298th Judicial District Court of Dallas County, Texas.  The Notleys allege that Sterling Bank made improper reports to credit reporting agencies in violation of the Fair Credit Reporting Act ("FCRA"), which negatively impacted their credit limits and interest rates.  *See* Plaintiffs' Amended Complaint ("Complaint") ¶ 16.

In May 2003, Stacy Notley began negotiating with Sterling Bank to obtain a home improvement loan.  *See* Plaintiffs' Amended Motion for Partial Summary Judgment ("Plaintiffs' Motion") at 3.  In June 2003, the Notleys executed a six-month interim construction note for $50,000, with the intention of executing a twelve-year loan agreement with the bank at a fixed rate of seven percent upon maturation of the interim note.  Complaint ¶ 1.  While negotiating the six-month note, Christopher Newtown ("Newtown"), an executive vice president of the bank, prepared and presented a Credit Approval Presentation ("CAP") to the Notleys showing that the interim loan would be followed by the permanent twelve-year loan.  *See* Plaintiff's Motion at 3, 5.  The Notleys allege that they executed the interim loan agreement with the understanding that the bank had agreed to issue the permanent loan under the terms stated in the CAP.  *Id.* at 5.

By the time the six-month note matured in December 2003, Newtown had left the employ of the bank, and the bank's new loan officer, Eric Boeckman

("Boeckman"), informed the Notleys that the bank would need an appraisal and slab survey before it could execute the permanent loan agreement. *Id.* at 6. To give the Notleys time to comply with these additional requirements, Boeckman allegedly extended the interim loan for ninety days. Complaint ¶ 2. When the permanent loan documents were tendered to the Notleys in February 2004, the bank offered a five-year loan instead of the twelve-year loan to which the Notleys had previously agreed. *Id.* ¶ 3. Stacy Notley informed Boeckman both verbally and in writing that the Notleys would not execute the proposed loan agreement because the bank had agreed to a twelve-year loan when it presented the CAP. Plaintiffs' Motion at 8.

When the interim note came due in December and the Notleys did not immediately execute an agreement for a permanent loan, the bank began filing reports with credit reporting agencies showing that the Notleys were delinquent on the entire balance of the loan. Complaint ¶ 6. Upon discovering the bank was making adverse reports to credit reporting agencies, Stacy Notley made a written demand to Boeckman that the bank have the adverse credit information removed from the Notleys' credit reports. Plaintiffs' Motion at 12. When Boeckman did not immediately respond to this demand, the Notleys hired an attorney to make a written demand that the bank honor its commitment to the twelve-year loan agreement and correct the negative credit reporting. *Id.* at 12-13.

## II.  ANALYSIS

### A.  Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovant cannot survive a motion for summary judgment, however, by merely resting on the allegations in its pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

B. Objections to Summary Judgment Evidence

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c). See *Celotex*, 477 U.S. at 324. While the form of the summary judgment

evidence need not be admissible, the content of the evidence must meet evidentiary requirements. See *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay statements in an affidavit were "incompetent summary judgment evidence"). Thus, while an affidavit has limited admissibility at trial, it is sufficient evidence to support or defeat a motion for summary judgment even though inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court. See *id*.

The defendant makes two general objections to the plaintiffs' summary judgment evidence and several specific objections. The defendant's first general objection is to the submission of what it alleges are uncertified deposition transcripts. *See* Brief in Response to Plaintiffs' Amended Motion for Partial Summary Judgment ("Defendant's Response") at 2. Although the defendant acknowledges the deposition transcripts contain a faded stamp on the certification page, it alleges that the stamp is illegible and, therefore, inadequate. *Id.* at n.1. The defendant has presented no evidence that the deposition transcripts are inaccurate or that someone has tampered with them, and the court will not assume such malfeasance. Although the certification stamp is not entirely legible, the court can discern the words "certified transcript" and "electronically signed." *See*, *e.g.*, Notley Exhibit A at 123. Consequently, the defendant's first objection is overruled.

The defendant next objects to the plaintiffs' submission of evidence to which they do not specifically cite in their motion.  Defendant's Response at 2-3.  The court's local rules require parties to cite "to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary evidence on which the party relies to support or oppose the motion."  Local Rule 7.2(e).  Accordingly, the court does not generally consider extraneous evidence in a party's appendix.  However, it is imprudent to specifically strike such evidence because, in some circumstances, evidence specifically cited by a party will reference another piece of evidence not specifically cited by the party in its motion.  For example, the movant may cite a portion of deposition transcript in which the deponent is discussing a deposition exhibit not specifically referenced by the movant.  Although the deposition exhibit may not be directly relevant to the point the movant is seeking to make, the contents of the exhibit may provide context necessary for the court to fully understand the implications of the deponent's testimony.  Therefore, the defendant's second general objection is also overruled.[1]

In addition to the two general objections discussed *supra*, the defendant objects to several specific items of evidence presented by the plaintiffs.  Rather than address each of the specific objections here, the court will address, as the need arises, those objections raised by the defendant involving evidence cited in this opinion.  In

---

[1]       However, the court will not consider evidence that the plaintiffs fail to bring to the court's attention either directly or indirectly.

addition, because the plaintiffs' motion for summary judgment is denied, the

defendants' objections not specifically addressed below are overruled as moot.

## C.   The Plaintiffs' Motion for Summary Judgment

To obtain summary judgment on the bank's liability under Section 1681s-2(b)

of the FCRA, the Notleys must present uncontroverted evidence that the bank

(1) received notice from a consumer reporting agency ("CRA") that the plaintiffs

disputed the bank's reporting of an account, and (2) the bank either failed to conduct

a proper investigation or failed to report the results of that investigation to the CRA

that provided the notice.  15 U.S.C. § 1681s-2(b)(1).

The plaintiffs have provided evidence that the bank received notice from

Experian that the Notleys' disputed the accuracy of information reported by the

bank.  *See* Notley Exhibit 19.[2]  They have also presented evidence that the bank had

information in its possession that conflicted with the information it reported to CRAs

after the bank received notice of the dispute from Experian.  *See* Deposition of

Lynn P. Prude ("Prude Deposition") at 67:11-68:19.[3]  However, instead of providing

---

[2]      The defendant objects to the correspondence from Experian as hearsay.
*See* Defendant's Response at 7.  Because the document is being presented to prove the
matter asserted therein -- that Experian notified the bank of the dispute and the bank
verified the account -- the correspondence is hearsay.  However, the court finds that
the residual exception stated in Federal Rule of Evidence 807 applies to the
document.

[3]      The defendant objects to sections of Prude's testimony on grounds of
hearsay and lack of foundation.  *See* Defendant's Response at 3.  The objection for
(continued...)

evidence that there is no dispute as to a material fact, the evidence proffered by the plaintiffs actually highlights the fundamental dispute at issue in this case.

Prude's deposition testimony provides evidence that the Notleys' loan had matured and was past due when the bank began making adverse reports on the Notleys' credit.  *See* Prude Deposition at 69:8-70:18 (explaining that there was not a valid note governing the agreement between the bank and the Notleys after the interim loan matured).  The issue of whether the Notleys or the bank were at fault for the lack of a written permanent loan agreement after the maturation of the interim loan agreement is a fact intensive inquiry that is inappropriate for summary judgment.  Because there is a dispute over the validity of the bank's reports to CRAs, the Notleys' motion for summary judgment must be denied.

D.  The Defendant's Motion for Summary Judgment

The bank presents three allegations in support of its motion for summary judgment:  (1) there is no evidence that the Notleys suffered any actual damages as a result of the bank's actions; (2) the Notleys failed to mitigate their alleged damages; and (3) there is no evidence that the bank violated any provision of the FCRA.  Each

---

[3](...continued)
lack of foundation appears to be related to questions involving a credit report. Because the sections of Prude's testimony cited by the court show that Prude has independent knowledge of the facts she is asserting, the objection for lack of foundation is overruled.  Moreover, the court is unable to identify any hearsay testimony in the sections cited, so that objection is also overruled.

of these allegations will be addressed in turn.  *See* Brief in Support of Defendant's

Motion for Summary Judgment ("Defendant's Motion") at 1-2.

### 1.  *Actual Damages*

The bank cites a single case from the Eastern District of New York for the

proposition that a plaintiff must show actual damages in order for a defendant to be

liable under the FCRA.  *Id.* at 4.  Not only is the cited case not binding authority for

this court, the proposition cited by the defendant is correct only in cases where the

plaintiff has alleged actual damages.  See *TRW Inc. v. Andrews*, 534 U.S. 19, 34-35

(2001).  As the Supreme Court noted in *TRW Inc.*, actual damages are not necessary

to sustain a cause of action under the FCRA when the plaintiff alleges a willful

violation of the act and claims punitive damages under Section 1681n.  *Id.*  Because

the Notleys allege a willful violation of Section 1681s-2(b) and claim punitive

damages under Section 1681n, the court need not, and does not, reach the question

of whether the plaintiffs have presented adequate evidence of actual damages.  *See*

Complaint ¶ 21.  The bank's first ground for summary judgment is, therefore, denied.

### 2.  *Failure to Mitigate Damages*

The bank next asks the court to deny the Notleys any recovery for damages

caused by increases in the interest rates on the Notleys' credit cards due to an alleged

failure to mitigate damages.  *See* Defendant's Motion at 12.  The bank points out that

the Notleys' damage model assumes that the plaintiffs will be making the minimum

payments (or close thereto) on their credit cards for up to fifty years. *Id.* at 11-12.

The defendant posits that it is unreasonable for the Notleys to maintain high interest

debt over such a long period and that with an annual income in excess of $200,000,

the Notleys should be able to pay off their credit card debts. *Id.*

The Notleys counter that the derogatory credit reports made by the bank

caused them "to be unsuccessful in their attempts to mitigate the damages they were

incurring." *See* Brief in Support of Plaintiffs' Response to Defendant's Motion for

Summary Judgment ("Plaintiffs' Response") at 14.  In addition, the plaintiffs seem to

argue that they are not obligated to pay down their credit card debts because the

bank attempted to coerce them into settling this case by threatening to continue

making derogatory reports to credit reporting bureaus if the Notleys refused to accept

the bank's initial settlement offer. *Id.*  Even if the court accepted the plaintiffs'

coercion argument, the Notleys would not be relieved of their responsibility to

mitigate their damages.  Nothing in the law allows a plaintiff to incur unnecessary

damages simply because the defendant is allegedly committing an intentional wrong.

Although the plaintiffs will be required to show their efforts to mitigate their

damages at trial, the defendant has not carried its burden of showing that the

plaintiffs should recover no damages from the increased interest rates on their credit

cards.[4]  To the contrary, the defendant explains that the Notleys' credit card debt

---

[4]        "[I]f the movant bears the burden of proof on an issue, either because he
(continued...)

- 11 -

exceeds $62,000 -- not an insignificant or easily payable amount, even for someone a high income.  Moreover, although having a household income in excess of $200,000 indicates that the Notleys would likely be able to pay more than the minimum amount due on their credit card balances each month, the bank has submitted no evidence regarding the Notleys' other expenses and liabilities or their ability to obtain alternative financing to consolidate their credit card debt at a lower interest rate. Accordingly, the court can make no determination regarding the Notleys' ability to mitigate their damages or the amount of damages that the Notleys should have avoided.  The bank's motion for summary judgment on this ground is denied.

3.  *Violations of the FCRA*

Finally, the bank asserts that there is no evidence that it violated the FCRA. *See* Defendant's Motion at 13.  Section 1681s-2(b) of the FCRA requires that those who furnish credit information to CRAs must, upon receiving notice from a CRA that a consumer has disputed information reported by the CRA, conduct an investigation verifying the accuracy of the account information reported and report the results of that investigation to the CRA that gave the notice.  15 U.S.C. § 1681s-2(b)(1).  In addition, if the investigation reveals that the account information previously reported

---

[4](...continued)
is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1191 (5th Cir. 1986) (emphasis in original).

was inaccurate, the investigating party must report the corrected information to all

CRAs to which the party had previously reported information regarding the account.

*Id.*

To avoid summary judgment on this point, the Notleys must present some

evidence that the bank (1) received notice from a CRA that the plaintiffs disputed the

bank's reporting of an account, and (2) that the bank either failed to conduct a

proper investigation or failed to report the results of that investigation to the CRA

that gave the notice.  15 U.S.C. § 1681s-2(b)(1).  To meet this burden, the Notleys

proffer the Affidavit of Stacy Notley and correspondence from Experian dated

August 4, 2005.  *See* Plaintiffs' Response at 15.  Considering the evidence presented

by the plaintiffs, the court finds that there exists evidence from which a reasonable

fact finder could conclude that the bank violated the FCRA.

The correspondence from Experian that the Notleys have presented shows that

Experian -- a CRA -- notified the bank that the Notleys disputed an account reported

by the bank and that the bank verified the accuracy of the account information.  *See*

Notley Exhibit 19.  Moreover, the plaintiffs have presented evidence that the bank

had information regarding the account in its possession that was inconsistent with the

information the bank reported to the CRAs.  *See* Prude Deposition at 67:11-68:19

(showing the bank knew the Notleys were making payments on the loan).

Consequently, the plaintiffs have provided some evidence that the bank failed to

properly investigate the account after receiving notice of the dispute from Experian.

The defendant's motion for summary judgment on this ground is denied.

### III.  CONCLUSION

For the reasons set forth above, the defendant's objections to the plaintiffs'

summary judgment evidence are **OVERRULED**, the plaintiffs' motion for summary

judgment is **DENIED**, and the defendant's motion for summary judgment is

**DENIED**.

**SO ORDERED**.

January 24, 2007.

_____

A. JOE FISH

CHIEF JUDGE