UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STACY C. NOTLEY, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-0536-G |
| STERLING BANK, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The court held a bench trial in this Fair Credit Reporting Act ("FCRA") case
from February 8, 2007 to February 12, 2007. The plaintiffs, Stacy and Sandra
Notley ("the plaintiffs" or "the Notleys"), allege that the defendant, Sterling Bank
("the defendant" or "the bank"), violated 15 U.S.C. § 1681s-2(b) by reporting
incomplete and inaccurate information to a consumer reporting agency regarding the
Notleys' performance on a home improvement loan. *See* Joint Pretrial Order at 13-
14. The defendant counters that the plaintiffs are pursuing this action in bad faith in
contemplation of receiving a large award of damages. *Id.* at 10, 14.

Based on the trial held in this case, the court renders the following findings of fact and conclusions of law in accordance with Federal Rule of Civil Procedure 52.

## I.  FINDINGS OF FACT

1.      The Notleys believed they had an agreement for a twelve-year loan with the bank based on representations made by the bank's employee, Christopher Newtown.

2.      The plaintiffs disputed the completeness or accuracy of an item contained in their respective credit reports by providing notice of the dispute to the bank and to Experian -- a consumer reporting agency.

3.      Experian conducted some investigation regarding the dispute.

4.      The plaintiffs did not prove that Experian or any other consumer reporting agency notified the bank of the Notleys' dispute within five business days of receiving notice of the dispute from the Notleys.  *See* Plaintiffs' Supplemental Trial Brief on FCRA Section 623(b) and Relevant Fifth Circuit Case Law ("Plaintiffs' Supplemental Brief") at 10 (stating that the plaintiffs did not receive copies of the dispute notification from the consumer reporting agencies or from the bank).

5.      The bank has no record that it received a notice regarding the Notleys' dispute from a consumer reporting agency during the month of July 2005.

6.    The plaintiffs did not prove that any notice given by a consumer reporting agency to the bank was provided at the address or in the manner the consumer reporting agency had established with the bank.  *Id.*

7.    The plaintiffs did not prove that any notice given by a consumer reporting agency to the bank included all relevant information regarding the dispute, including information that the consumer reporting agency received from the Notleys. *Id.*

## II.  CONCLUSIONS OF LAW

### A.  The Plaintiffs' FCRA Claim

To establish their cause of action under 15 U.S.C. § 1681s-2(b), the Notleys must prove two elements.  First, the plaintiffs must prove that Sterling Bank received notice -- in the manner provided by 15 U.S.C. § 1681i(a)(2) -- from a consumer reporting agency that information the bank had furnished to the consumer reporting agency had been disputed by the plaintiffs.  See *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 639 (5th Cir. 2002); *King v. Equifax Info. Services*, No. Civ.A. H-05-0628, 2005 WL 1667783, *3 (S.D. Tex. July 15, 2005).  Second, the plaintiffs must show that the bank failed to properly investigate the dispute or to report the results of the investigation in one of the following ways:  (a) the bank failed to conduct an investigation; (b) the bank failed to review all relevant information provided by the consumer reporting agency in accordance with 15 U.S.C.

§ 1681i(a)(2); (c) the bank failed to report the results of the investigation to the consumer reporting agency; (d) if the investigation found that the information was inaccurate, that the bank failed to report those results to all other consumer reporting agencies to which the bank furnished the information; or (e) if the information was found to be inaccurate, that the bank failed to have the consumer reporting agency (i) modify the information, (ii) delete the information, or (iii) permanently block the reporting of the information. *See* 15 U.S.C. § 1681s-2(b)(1)(A)-(E). However, the court only reaches the inquiry on this second element if the plaintiff has proven that proper notice of the dispute was received by the defendant; otherwise, the defendant's duty to comply with subsections 1681s-2(b)(1)(A)-(E) is not triggered. See *Young*, 294 F.3d at 640.

In an attempt to explain how they have satisfied the first element of their FCRA claim, the plaintiffs argue that they "have provided *some* evidence that *tends to show*" that the defendant received notice of the Notleys' dispute from a consumer reporting agency within five business days, in accordance with the requirements of 15 U.S.C. §§ 1681s-2(b) and 1681i(a)(2). Plaintiffs' Supplemental Brief at 18 (emphasis added). However, the plaintiffs concede that they do not have copies of the alleged notices showing when they were sent by the consumer reporting agency or when they were received by the bank.[1]

---

[1]       In their supplemental brief, the plaintiffs repeatedly state that the
(continued...)

The plaintiffs' argument that the notice was provided within five business days is also unconvincing.  The plaintiffs outline their argument in several steps.  First, they allege that they mailed letters disputing the information reported by the bank to consumer reporting agencies on Monday, July 11, 2005.  *Id.* at 17.  Next, they contend that the court should assume the notices were received by the consumer reporting agencies three days later, on Thursday, July 14, 2005.  See *id.*  Under these assumptions, the consumer reporting agencies had until Wednesday, July 20, 2005 to notify the bank of the Notleys dispute.  *See* 15 U.S.C. § 1681i(a)(2).  Finally, the Notleys ask the court to assume that because a consumer reporting agency -- Experian -- sent them a letter dated July 19, 2005 stating that it was "contacting the source of the information" disputed by the Notleys, the court should assume that Experian contacted the bank the same day or the next day.  Plaintiffs' Supplemental Brief at

---

[1](...continued)
defendant did not produce copies of the notices the Notleys allege it received from consumer reporting agencies.  *See* Plaintiffs' Supplemental Brief at 10, 11.  The plaintiffs then suggest that if the testimony presented by one of the defendant's trial witnesses was accurate -- that the bank's file for the Notleys did not contain any dispute notices from a consumer reporting agency for July 2005 -- then some sort of malfeasance must have occurred.  *Id.* at 13 (alleging that "someone had to have manually purged those documents from the files").  However, the court will not assume that the defendant acted nefariously without convincing evidence that a consumer reporting agency actually reported the dispute to the defendant. Furthermore, if the plaintiffs intended to seek a discovery sanction whereby the court *would* assume the notice was received by the bank based on allegations that the bank acted improperly, the time to do so has passed.  At this point, the plaintiffs' admission that they did not have this evidence available to present at trial merely indicates their inability to prove the essential elements of their FCRA claim.

- 5 -

17-18.  However, proof that the notice *could have been given* within the time frame specified by the FCRA is not adequate to show that timely notice *actually was received* by the bank within the five business day period,[2] especially in light of the testimony from the bank's employee, Ms. Cuellar, stating that the bank has no record showing that it received notice from a credit reporting agency regarding the Notleys in July 2005.

In addition, even if the court were willing to consider evidence of what might have happened as evidence of what actually occurred, the Notleys have still provided no evidence that the notice Experian allegedly sent to the bank in July 2005 complied with the other requirements of Sections 1681s-2(b) and 1681i(a)(2) -- that the notice was provided at the address or in the manner the consumer reporting agency had established with the bank, *see* Finding 6, and that it included all relevant information regarding the dispute, including information provided by the Notleys, *see* Finding 7.

### B.  The Defendant's Bad Faith Counterclaim

In its amended answer, the bank alleges that the Notleys filed this suit "in bad faith and for purposes of harassment."  *See* Defendant's First Amended Answer, Affirmative Defenses and Counterclaim ("Defendant's Answer") ¶ 26.  Accordingly, it

---

[2]      Indeed, it is also plausible that Experian did not respond to the Notleys within five business days.  If the letter was mailed on the morning of July 11, 2005, it is possible that it was received as early as July 12, 2005.  In that case, Experian's response to the Notleys' letter on July 19, 2005 would have occurred on the sixth business day -- one day past the five business day deadline.

seeks recovery for attorneys fees and expenses pursuant to 15 U.S.C. §§ 1681n and

1681o.  *Id.*  However, the defendant did not present evidence to show the plaintiffs'

alleged bad faith at trial.  Because the court finds that the Notleys believed they had

an agreement with the bank for a twelve-year home improvement loan, *see* Finding 1,

the court concludes that they did not file or pursue this action in bad faith or for

purposes of harassment.

III.  <u>CONCLUSION</u>

Because the Notleys failed to prove by a preponderance of the evidence that

the bank received the required notice under 15 U.S.C. § 1681s-2(b), they have not

satisfied the first element of their FCRA cause of action.  Accordingly, judgment will

be entered pursuant to Federal Rule of Civil Procedure 58 that the Notleys take

nothing from the defendant on their claims in this case.  Similarly, judgment will be

entered that the defendant take nothing from the Notleys on its counterclaim.

**SO ORDERED**.

February 27, 2007.

A. JOE FISH
CHIEF JUDGE